**Entered on Docket
December 01, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: December 01, 2006**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                          No. 06-40657 TM
                                               Chapter 7
JUAN RAMON GUTIERREZ,

        Debtor.
_____/

**MEMORANDUM OF DECISION**

The above-captioned debtor (the "Debtor") filed a motion, seeking an order compelling his former bankruptcy attorney, Jaime Alcabes ("Alcabes"), to disgorge all monies received in connection with his representation of the Debtor in the above-captioned case. Because the material facts presented by the motion were disputed, the Court held an evidentiary hearing on the motion on November 17, 2006. At the conclusion of the hearing, the Court took the matter under submission. Having now considered the relevant evidence and authority, the Court concludes that the motion should be granted.

**SUMMARY OF FACTS**

Alcabes represented the Debtor in connection with the above-captioned bankruptcy case. Alcabes was paid $700 for his legal services by the ARAG Group ("ARAG") through a plan provided by the

employer of his wife, Teresita ("Teresita"). The only money Alcabes received from the Debtor and Teresita was $445 to cover the costs of filing the bankruptcy case: i.e., $299 for the filing fee, $50 for pre-petition credit counseling, and $90 for the post-filing financial management course.

The Debtor and Teresita met with Alcabes for the first time on or about March 13, 2006. At that time, the Debtor and Teresita disclosed that they owned a home in San Pablo, California (the "Home"). Based on their discussion, Alcabes concluded that the Home had little unencumbered value.

Based on the information provided to him, Alcabes prepared Schedules of Assets and Liabilities (the "Schedules") and a Statement of Financial Affairs (the "SOFA") for the Debtor. Schedule A listed 100 percent fee interest in the Home as an asset of the Debtor. Schedule C claimed a homestead exemption in the Home in the amount of $18,851, the difference between the estimated value of the Home and the amount of the encumbrances. The box entitled None was checked under item 10 of the SOFA, which directs the debtor to list any transfers of property outside the ordinary course of business within the last two years.

The Debtor and Teresita met with Alcabes again on March 28, 2006. At that time, Teresita signed an information sheet on an ARAG form (the "ARAG Form"), a copy of which was introduced into evidence at the trial on this motion. On the same day, the Debtor signed a quitclaim deed, transferring his interest in the Home to Teresita.

Case: 06-40657    Doc# 34    Filed: 12/01/06    Entered: 12/01/06 15:11:53    Page 2 of 19

Neither the Debtor nor Teresita disclosed this transfer to Alcabes. The Deed was recorded on April 12, 2006.

The Debtor signed the bankruptcy petition, the Schedules and the SOFA on May 3, 2006. The bankruptcy was filed on the same day. Alcabes appeared with the Debtor at the meeting of creditors. At the meeting, the chapter 7 trustee, Paul Mansdorf ("Mansdorf") told Alcabes about the Debtor's pre-petition transfer of his interest in the Home. Alcabes questioned the Debtor and Teresita about this privately. The Debtor blamed Teresita for the transfer.

Teresita initially told Alcabes that the transfer had occurred post-petition. Alcabes informed her that he knew this was not the case. According to Alcabes, Teresita then apologized for lying. Teresita denied apologizing for lying. She testified that Alcabes had accused her of getting him in trouble and she had apologized for that.

At the evidentiary hearing, Teresita testified that the Debtor's interest in the Home had been transferred to her so that she could use her better credit to refinance the mortgage. She testified that she had intended to transfer the Debtor's interest back to him later. She testified that she had been advised to do this by real estate agents. She admitted that she did not disclose her plans to Alcabes or ask him whether this would be a problem in view of the Debtor's imminent bankruptcy filing.

On June 8, 2006, Mansdorf filed an adversary proceeding against Teresita, seeking to avoid the Debtor's pre-petition transfer of his interest in the Home as an actually fraudulent transfer pursuant to

3

11 U.S.C. § 548(a)(1) and to recover the avoided transfer or its value for the benefit of the estate pursuant to 11 U.S.C. § 550(a)(1). A trial has been scheduled in the adversary proceeding for March 23, 2007.

On June 9, 2006, Mansdorf filed an objection to the Debtor's claim of a homestead exemption, anticipating the recovery of the Home through the adversary proceeding. The basis for the objection was that a debtor may not claim an exemption in property voluntarily transferred pre-petition and recovered by the trustee through an avoidance action. See 11 U.S.C. § 522(g)(1)(A).

On June 19, 2006, Alcabes filed a motion seeking to withdraw as the Debtor's bankruptcy counsel. The Debtor objected to Alcabes' motion unless, as a condition, he were required to refund the money paid for the case. The Court granted Alcabes' motion to withdraw without imposing this condition, concluding that the Debtor's request that the monies received be refunded should be considered as a separate matter. The motion to withdraw was granted pursuant to an order entered on August 15, 2006.

**DISCUSSION**

**A. SUMMARY OF ARGUMENT**

The Debtor contends that Alcabes did not comply with the obligations imposed on a "debt relief agency" in representing an "assisted person" in various respects as set forth in the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). As a consequence, he contends that, pursuant to 11

4

U.S.C. § 526(c), Alcabes should be required to repay to ARAG all payments received for his services.[1]

The deficiencies in Alcabes' services alleged by the Debtor are as follows:

1. Alcabes did not prepare the petition and the Schedules properly with information provided to by the Debtor. I.e., the Debtor told Alcabes that he owned the Home jointly with Teresita and that Alcabes inaccurately set forth in the Schedules that the Debtor held a 100 percent fee interest in the Home.

2. Alcabes did not ask the Debtor whether there had been any changes in the information previously provided to him at the time he asked the Debtor to sign the petition, the Schedules, and the SOFA.

3. Alcabes did not provide the Debtor with "a Bankruptcy Truthfulness Notice" before the Debtor signed the petition.

4. Alcabes did not honestly disclose to the Court the amount of the fees that he had collected in connection with the bankruptcy case.

5. Alcabes provided substandard services in connection with the challenge to the Debtor's homestead exemption and in other litigation involving the Debtor's family.

---

[1] The Debtor also bases his motion on Rule 2017 of the Federal Rules of Bankruptcy Procedure. Rule 2017(a) of the Federal Rules of Bankruptcy Procedure provides that the court may, after notice and a hearing, require an attorney to repay to the debtor any fees received from the debtor for services rendered or to be rendered which are determined to be excessive. See Fed. R. Bankr. Proc. 2017(a). Since the Debtor did not pay Alcabes any money for his services, this rule is inapposite.

5

6. Alcabes did not give the Debtor a disclosure of the differences between the various bankruptcy chapters before the bankruptcy petition was filed.

7. Alcabes did not disclose the services and fees that he would charge the Debtor within five days after he first met with the Debtor to discuss the potential bankruptcy filing.

8. Alcabes failed to execute and have the Debtor execute an attorney-client retention agreement.

In response, Alcabes contends that there is no basis for requiring him to refund his fees to ARAG. He notes that he has represented clients covered by the ARAG legal plan for over twenty years and has handled several hundred matters, with no prior complaints. He notes that the ARAG plan requires him and the client to sign the ARAG Form. At the evidentiary hearing, he testified that he has never executed a separate attorney-client retention agreement with a client covered by the ARAG plan and knows of no other attorney who does so.

Alcabes denies failing to or inaccurately setting forth the amount or the source of his fees in his filings with the bankruptcy court. He admits that he owed the Debtor a refund for the cost of a credit counseling course. He included this cost in the amount demanded from the Debtor. However, the Debtor then paid for his own course. He declares that he sent the Debtor a check to reimburse him for this cost, but that the Debtor has not cashed it.

With respect to the Home, Alcabes declares that he discussed the Home in detail with the Debtor and Teresita on several occasions.

6

He contends that the Debtor was well aware of the contents of the Schedules when he signed the petition. At no time did the Debtor disclose to him that he had transferred his interest in the Home to Teresita.

**B. DECISION**

The alleged deficiencies cited by the Debtor may be divided into two categories: (1) deficiencies related to the Home and (2) other deficiencies. The Court will address each of these categories in turn.

    **1. Deficiencies Related to Home**

Three of the deficiencies alleged above--items 1, 2, and 5--relate to the Home. As noted above, the Debtor contends that Alcabes should not have indicated on the Schedules that he held a 100 percent fee interest in the Home since he had been advised that the Debtor and Teresita owned the Home jointly. Moreover, he contends that Alcabes should have asked him at the time the Schedules were signed whether there had been any changes in his circumstances, making the information previously provided to Alcabes inaccurate. Finally, the Debtor contends that it was negligent for Alcabes to claim as a homestead exemption only an amount reflecting the difference between the estimated value of the Home and the balance of the encumbrances.

Section 526(a)(2) provides, in pertinent part, that:

> A *debt relief agency* shall not-
>
> ...
>
> (2) make any statement, or counsel or advise any *assisted person*...to make a statement in a document filed in a case or proceeding under

7

> this title, that is untrue and misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading[.]

11 U.S.C. § 526(a)(2). The Debtor apparently contends that the first two deficiencies violated 11 U.S.C. § 526(a)(2). He does not cite the Court to a specific rule or statute that the third deficiency is alleged to violate. Presumably, he contends that the manner in which the exemption was listed constitutes common law malpractice.

With respect to the first alleged deficiency, Alcabes does not deny that he was advised by the Debtor and/or Teresita that the Debtor and Teresita owned the Home jointly. The Debtor apparently contends that, even if the Debtor had not transferred his interest in the Home prior to filing the bankruptcy petition, it would have been inaccurate to list him as holding a 100 percent fee interest. However, the Debtor did not present any evidence establishing the precise manner in which the Home was held prior to the Debtor's transfer of his interest in it. At the trial, Teresita referred to the Home as community property. It is accurate for a debtor that owns his home as community property with his nondebtor spouse to claim a 100 percent interest in the Home. Thus, this claim of deficiency fails.

With respect to the second alleged deficiency, Alcabes did not recall specifically whether he had asked the Debtor at the time he signed the Schedules whether any information previously provided was inaccurate. However, the issue is whether, if he had asked this question, the Debtor would have advised him of the transfer. The

8

Case: 06-40657    Doc# 34    Filed: 12/01/06    Entered: 12/01/06 15:11:53    Page 8 of 19

Court does not believe that he would have.  As noted above, the Deed was signed the same day as the ARAG Form.  Teresita admitted that she did not discuss the propriety of the transfer with Alcabes.  Given the timing of the two events, the Court is unable to believe that the transfer simply slipped her mind.  She appears to have made a conscious decision not to disclose it to Alcabes.  Thus, the second claim of deficiency fails as well.

With respect to the third alleged deficiency--item 5 above--the Court agrees with the Debtor that it was substandard practice to claim as a homestead exemption only the difference between the estimated value of the Home and the balance of the encumbrances.  The estimate could prove inaccurate or the value of the Home might increase.  To prevent the loss of the full exemption to which a debtor is entitled, it is appropriate to claim the full exemption amount provided by law.

However, no harm has been established by the Debtor as a result of Alcabes' substandard practice in this regard.  A claim of exemption can be amended to increase the amount claimed if circumstances indicate that there is more equity than was previously anticipated.  See Fed. R. Bankr. Proc. 4003(b)(giving party in interest 30 days after any amendment to the list to object to an amended claim of exemption)  If the Debtor loses his homestead exemption here, it will not be the result of an understatement of the amount of the exemption claimed.  It will be the result of the Debtor's voluntary transfer of his interest in the Home to Teresita pre-petition.

Moreover, unlike the other alleged deficiencies, this alleged deficiency does not constitute a violation of 11 U.S.C. §§ 526, 527, or 528. Thus, it does not give rise to a remedy under 11 U.S.C. § 526(c).

**2. Other Deficiencies**

The other alleged deficiencies do not relate to the Home. As noted above, the Debtor complains that:

(a) Alcabes did not provide him with a "Bankruptcy Truthfulness Notice" before the Debtor signed the petition.

(b) Alcabes did not honestly disclose to the Court the amount of the fees that he had collected in connection with the bankruptcy case.

(c) Alcabes did not give the Debtor a disclosure of the differences between the various different bankruptcies before the bankruptcy petition was filed.

(d) Alcabes did not disclose the services and fees he would charge the Debtor within five days after he first met with the Debtor to discuss the potential bankruptcy filing.

(e) Alcabes failed to execute and have the Debtor execute an attorney-client retention agreement.

These alleged deficiencies are discussed below.

**(a) Bankruptcy Truthfulness Notice.**

As noted above, the Debtor contends that Alcabes did not give him a Bankruptcy Truthfulness Notice before he signed the bankruptcy petition. Section 527(a)(2) requires a debt relief agency to provide

10

the assisted person with a clear and conspicuous written notice advising the assisted person that:

> (A) all information that the assisted person is required to provide with a petition and thereafter during a case...is required to be complete, accurate, and truthful;
> (B) all assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;
> (C) current monthly income, the amounts specified in section 707(b)(2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b)(2), are required to be stated after reasonable inquiry; and
> (D) information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

11 U.S.C. § 527(a)(2). This notice must be provided to the assisted person "not later than 3 business days after the first date the debt relief agency first offers to provide any bankruptcy assistance...." 11 U.S.C. § 527(a)(2).

At the evidentiary hearing, Alcabes admitted that he did not provide the Debtor with this notice three business days after the first date they met to discuss the filing of a bankruptcy case for the Debtor. Thus, Alcabes clearly violated 11 U.S.C. § 527(a)(2).

**(b) Disclosure of Fees Collected**

The Debtor contends that Alcabes did not honestly disclose to the Court the amount of the fees that he had collected in connection with the bankruptcy case. The requirement that a debtor's counsel

11

accurately disclose to the court the fees collected in connection with a bankruptcy case is not new. Since its enactment in 1978, 11 U.S.C. § 329(a) has required "[a]ny attorney representing a debtor in a [bankruptcy] case...whether or not the attorney applies for compensation...[to] file with the court a statement of the compensation paid or agreed to be paid...for services rendered or to be rendered...and the source of such compensation." 11 U.S.C. § 329(a). Rule 2016(b) of the Federal Rules of Bankruptcy Procedure requires this statement to be filed within 15 days after the order for relief.

Item 9 of the SOFA directs the debtor to disclose all payments made for debt counseling or bankruptcy within the preceding year, including payments to attorneys. Alcabes prepared the SOFA. For some reason, he caused the box entitled "None" to be checked under this item. This was accurate since Alcabes did not receive any payment from the Debtor for his services, either before or after the bankruptcy was filed. In addition, Alcabes filed with the petition a form entitled Disclosure of Compensation of Attorney for Debtor. In this form, he disclosed that he was owed $700 for his services and that the source of the compensation was the ARAG Legal Plan. This information was also accurate.

The Debtor contends that Alcabes violated the Bankruptcy Code and/or Rules by failing to disclose the payments received from the Debtor. Alcabes initially admitted receiving only $420 from the Debtor. However, after being reminded of the receipt of an additional check for $25, he admitted receiving $445. However, these

12

payments were an advance for costs, not a payment of fees. Therefore, the disclosure requirements set forth above do not apply. The Debtor's complaint concerning this alleged deficiency has no merit.

**(c) Disclosure of Differences Between Chapters**

In his declaration in support of the motion, the Debtor's current attorney declared that the copy of the Debtor's file received from Alcabes did not contain the notice required by 11 U.S.C. § 342(b)(1). In his trial brief, the Debtor admitted to receiving this notice on the day the petition was signed. Nevertheless, he contended that Alcabes violated the statute by failing to give the Debtor the notice within three days of their first meeting.

Section 527(a)(1) of the Bankruptcy Code requires "[a] debt relief agency providing bankruptcy assistance to an assisted person" to provide the debtor with "the written notice required under section 342(b)(1)...." 11 U.S.C. § 527(a)(1). Section 342(b)(1) requires a debt relief agency to provide the assisted person, *before the filing of the case*, with a "written notice containing...a brief description of...chapters 7, 11, 12, and 13 and the general purpose, benefits, and costs of proceeding under each of those chapters." 11 U.S.C. § 342(b)(1)(emphasis added).

The Debtor contends that Alcabes violated the Bankruptcy Code by not giving him the notice required by 11 U.S.C. § 342(b)(1) within three days of their first meeting. This contention has no merit. As the highlighted language above indicates, a debt relief agency is only required to give the assisted person this notice prior to filing

13

the bankruptcy case. There is no evidence or even a clear contention that Alcabes failed to comply with this requirement.

**(d) Disclosure of Services and Fees**

The Debtor contends that Alcabes did not disclose the services and fees he would charge the Debtor within five days after he first met with the Debtor to discuss the potential bankruptcy filing. This contention overlaps with the final alleged deficiency and will be discussed in the next subsection.

**(e) Attorney-Client Retention Agreement**

The Debtor contends that Alcabes did not execute a written contract with him at all, let alone one that complied with 11 U.S.C. § 528(a)(1). Section 528(a)(1) requires a debt relief agency:

> not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person...[to] execute a written contract with such assisted person that explains clearly and conspicuously--
>   (A) the services such agency will provide to such assisted person; and
>   (B) the fees or charges for such services, and the terms of payment[.]

11 U.S.C. § 528(c)(1). Section 528(a)(2) requires the debt relief agency to "provide the assisted person with a copy of the fully executed and completed contract."

Alcabes admits that he did not execute any agreement with the Debtor describing the services he would provide and the fees or charges for such services. Three documents were offered into evidence: (1) an ARAG form; (2) a Bankruptcy Questionnaire & Document Request; and (3) a one page document in Spanish. None of these

14

documents is signed by both Alcabes and the Debtor and none explains the services to be provided by Alcabes. Only the one page document in Spanish refers to any charges to be paid. It appears to relate to the costs to be advanced by the Debtor. However, the amounts requested do not appear to correspond to the costs required to advanced. Clearly, Alcabes did not comply with the requirements of 11 U.S.C. § 528(a)(1) or (2).

**3. Availability of Relief Requested**

The Debtor contends that the Court should order Alcabes to reimburse ARAG in the amount of $700 on account of the deficiencies alleged above.[2] In support of this contention, he cites 11 U.S.C. § 526(c)(1), which provides as follows:

> Any contract for bankruptcy assistance between a *debt relief agency* and an *assisted person* that does not comply with the material requirements of this section, section 527, or section 528 *shall be void and may not be enforced* by any Federal or State court or by any other person, other than such assisted person.

11 U.S.C. § 526(c)(1)(emphasis added.) He contends that, if his contract with Alcabes is void, Alcabes should not be entitled to retain the $700. The Debtor also seeks payment of his reasonable attorneys' in the amount of $675 pursuant to 11 U.S.C. § 526(c)(1).

The Court does not read 11 U.S.C. § 526(c)(1) as requiring reimbursement of attorneys' fees already paid or as authorizing an award of attorney's fees for filing a motion to recover such fees.

---

[2]The Debtor bases its standing to seek this on the ground that the dollar amount of services covered by the ARAG legal plan is limited. Thus, if the amount received by Alcabes is reimbursed, the Debtor and Teresita will have additional coverage available.

15

Rather, it reads 11 U.S.C. § 526(c)(1) as preventing an attorney who fails to comply with the requirements of 11 U.S.C. §§ 526, 527, or 528 from obtaining a court order compelling the debtor to pay additional attorneys' fees otherwise be due and owing.

By contrast, 11 U.S.C. § 526(c)(2) provides that:

> Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have–
> (A) *intentionally or negligently* failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person;
> (B) provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document including those specified in section 521; or
> (C) *intentionally or negligently* disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

11 U.S.C. § 526(c)(2)(emphasis added). Thus, 11 U.S.C. § 526(c)(2) makes an attorney who acted intentionally or negligently liable for fees already received, actual damages, and attorneys' fees if the attorney's conduct was negligent or intentional.[3] Thus, to grant the

---

[3] Section 526(c)(2)(B) is particularly harsh. It appears to give an assisted person the right to recover its fees from an attorney who *in a previous case* has been found to have intentionally or negligently failed to comply with 11 U.S.C. § 526, 527, or 528 with the result that the case was dismissed or converted even if the attorney has done nothing wrong in the subsequent case. See 11 U.S.C. § 526(c)(2)(B).

16

relief requested by the Debtor, the Court must find that Alcabes acted (or failed to act) intentionally or negligently.

No evidence was presented that Alcabes knew about the requirements with which he failed to comply. Therefore, the Court does not find that his conduct was intentional. Whether it was negligent presents a closer question. The requirements of 11 U.S.C. § 527 and 528 first became effective in October 2005. Alcabes undertook to represent the Debtor in March 2006. He had not previously represented a bankruptcy debtor after the effective date of BAPCPA. The obligations imposed on a debtor's counsel by BAPCPA are numerous and detailed. These considerations weigh against finding Alcabes' conduct negligent.

However, Alcabes appears to have made little or no attempt to determine what new obligations were imposed by BAPCPA or to comply with them. The publicity regarding the enactment of BAPCPA was widespread. Alcabes cannot have been unaware of its enactment or of the dramatic change it made to the practice of consumer bankruptcy law. Alternatively, if Alcabes was not paying sufficient attention to such a fundamental change in this area of law, he should not have been representing a debtor in a bankruptcy case. Consequently, the Court concludes that Alcabes did act negligently by failing to comply with 11 U.S.C. §§ 527(a)(2) and 528(a)(1) and (2). As a consequence, the Court is compelled to award the Debtor the amounts specified by 11 U.S.C. § 526(c)(2).

**CONCLUSION**

The Debtor has failed to establish any actual damages as a result of Alcabes' failure to comply with 11 U.S.C. §§ 527 and 528. However, Alcabes will be required to repay to ARAG the $700 fee received from it and to pay the Debtor his reasonable attorneys' fees for prosecuting the motion. The Court finds that $675 is a reasonable attorneys' fee under the circumstances. Counsel for the Debtor is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Jaime A. Alcabes
1814 Franklin St., Ste. 630
Oakland, CA 94612

Gerard Launay
Law Office of Gerard Launay
2119 Addison St., Unit A
Berkeley, CA 94704